IN THE UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERIC A. CLAMPIT, | ) CASE NO.  3:22CV1561 |
| Plaintiff, | ) |
| vs. | ) JUDGE JAMES G. CARR |
| | ) |
| | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| Defendant. | ) **REPORT & RECOMMENDATION** |
| | ) |

Plaintiff, Eric A. Clampit, ("Plaintiff" or "Clampit"), challenges the final decision of Defendant, Commissioner of Social Security ("Commissioner"), denying his applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act,42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act"), and for Supplemental Security Income ("SSI") under Title XVI of Act.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED AND REMANDED for further proceedings consistent with this opinion.

I. PROCEDURAL HISTORY

In July 2017, Clampit filed applications for POD, DIB, and SSI, alleging a disability onset date of June 2017, and claiming he was disabled due to a learning disability and explosive anger.

1

Transcript ("Tr.") at 85, 238-40. His application was denied initially and upon reconsideration, and Clampit requested a hearing before an administrative law judge ("ALJ"). (Tr. 83-145, 180)

### A. First Hearing & Remand Order

In November 2018, ALJ Earl Ashford held a hearing on Clampit's applications. (Tr. 49-79) Clampit, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On January 24, 2019, the ALJ issued a written decision finding Clampit was not disabled. (Tr. 25-48) The ALJ's decision became final on March 28, 2019, when the Appeals Council declined further review. (Tr. 5-24) In July 2021, this Court reversed that determination in an order written by U.S. District Court Judge Jeffrey J. Helmick. (Tr. 939-942; *Clampit v. Cmm'r of Soc. Sec.*, Case No. 3:20cv1014). Judge Helmick reversed the Commissioner's determination because the ALJ failed to address medical opinion findings that conflicted with the RFC (i.e. the state psychiatric consultants' opinions that Clampit was limited to "superficial" contact). (Tr. 941)

### B. Second Hearing & Current Case

After the Appeals Council issued an Order of Remand, a telephonic remand hearing was held with ALJ Ashford on June 14, 2022, during which an impartial VE and Medical Expert (Neli Cohen, PsyD) also testified. (Tr. 836, 864-91) Clampit did not testify at the remand hearing. (Tr. 878) Clampit's counsel stated that Clampit's prior testimony was comprehensive and did not need to be updated. (*Id.*) On June 24, 2022, ALJ Ashford again found Clampit was not disabled. (Tr. 836-55) Clampit then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1) The parties have completed briefing in this case. (Doc. Nos. 6-8) In his brief, Clampit asserts as his sole assignment of error:

> The ALJ's residual functional capacity is not supported by substantial evidence because the ALJ failed to properly account for all of the persuasive limitations opined by the state agency psychologists.

(Doc. No. 6 at 2)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Clampit was born in 1987 and was 29 years-old at the time of his alleged disability date, making him a "younger person," under social security regulations. (Tr. 84) *See* 20 C.F.R. § 416.963. He has a limited education and is able to communicate in English. (*Id.*) He has past relevant work as a fork life driver and palletizer. (Tr. 853)

### B. Relevant Medical Evidence

Based on the distinct issue on appeal and the fact that no new relevant medical evidence has been submitted since the prior remand, the undersigned finds a recitation of the medical evidence is not in the interest of judicial economy. All medical evidence summarized in this Court's prior opinion in *Clampit v. Cmm'r of Soc. Sec.*, Case No. 3:20cv1014, is incorporated herein. Further, all relevant medical evidence will be outlined in the analysis section of this opinion.

### C. Hearing Testimony

On June 14, 2022, a remand hearing was held with ALJ Ashford. (Tr. 864-91) Clampit, represented by counsel, attended the hearing but did not testify. (Tr. 878) Vocational Expert Thomas Nimberger ("VE") and Medical Expert Dr. Neli Cohen ("ME") both testified.

During the hearing, Dr. Cohen affirmed that she never examined Clampit but had reviewed medical records labeled 1F to 21F. (Tr. 868) Dr. Cohen opined that intermittent depression and anger problems were the only medically determinable impairments that the records substantiated. (*Id.*) Dr. Cohen noted that Clampit did not receive mental health treatment between 2014 and 2018, received no treatment in 2019, and did not receive treatment after 2020. (Tr. 869) Dr. Cohen stated that impulsive explosive disorder was mentioned in the records she reviewed, but she needed more

information to verify such a diagnosis. (*Id.*) Dr. Cohen opined that Clampit did not meet a Listing. (Tr. 869-70). Dr. Cohen further opined that Clampit had the following limitations related to his mental health issues: very occasional interaction with the public due to intermittent anger; moderate to marked limitation in his ability to deal with work stress; no complex judgments; and could perform simple and routine tasks. (Tr. 871)

Clampit's counsel then questioned Dr. Cohen. Counsel asked if Dr. Cohen reviewed Exhibit 18B. (Tr. 872) Dr. Cohen stated that she only reviewed section F. (*Id.*) Dr. Cohen also testified that, although the records reflect that Clampit self-reported having problems with co-workers, Dr. Cohen did not see objective evidence to support the issue. (Tr. 873) Dr. Cohen also stated that she only saw two incidents with co-workers and supervisors reported by Clampit in the record. (*Id.*) She also testified that Clampit's self-reported problems with co-workers and supervisors did not indicate specific context for the incidents. (Tr. 875-76)

The VE also testified at the hearing. The ALJ posed three hypothetical scenarios to the VE about whether an individual of Clampit's age and education could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1. Any exertional level; can understand, remember, and carryout simple instructions not requiring specific production rate, such as assembly line work, nor work requiring hourly quotas; capable of using judgment to make simple, work-related decisions with occasional changes in a routine work setting. During a training period of up to 30 days, capable of occasional interaction with co-workers and supervisors. After the training period, limited to brief and superficial interactions with the general public – superficial defined as able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks. (Tr. 880)
   - The VE first clarified whether superficial interaction applied to the training period. The ALJ clarified that it did not. (Tr. 880-81) The VE then stated that the hypothetical person in question #1 could perform Clampit's past work as a palletizer and forklift operator. The VE also testified that the hypothetical individual could perform work as a packager, kitchen helper, and an office cleaner. (Tr. 882-83).

2. The ALJ then added to hypothetical #1 that, in addition to normal work breaks, the individual would be off task 20% of the work period. (Tr. 883).

4

- The VE testified that adding the off task/absentee limitation would result in no work for such an individual. (*Id.*)

Clampit's counsel also questioned the VE, asking whether changing the ALJ's first hypothetical to brief and superficial interaction with public, co-workers, and supervisors during and after training period affected the jobs mentioned. (Tr. 886) The VE testified that with all jobs, supervision would have to be at least occasional and more than superficial, thus, the modification would preclude employment. (Tr. 886-87) The VE also testified that if a job prohibited contact, it would be work done in isolation and there would be no work for the hypothetical individual. (Tr. 888)

### III. STANDARD FOR DISABILITY

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work

5

experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2025.

2. The claimant has engaged in substantial gainful activity since June 30, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depression /bi-polar disorder; anxiety /obsessive compulsive disorder; learning disability /borderline intellectual functioning; and paranoid personality /impulse control disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Can understand, remember and carry out simple instructions for work not requiring a specific production rate, such as assembly line work, nor work requiring hourly quotas. Capable of using judgement to make simple work related decisions, with occasional changes in a routine work setting. During a training period of up to 30 days, capable of occasional interaction with coworkers and supervisors. After the training period limited to brief and superficial occasional interactions with the general public. Superficial defined as, able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion, or involve tandem tasks.

> 6. The claimant has past relevant work as a forklift driver and palletizer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 35-51)

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388,

7

389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI. ANALYSIS

Clampit presents one assignment of error in his merits brief. (Doc. 6 at 2) Clampit argues that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to properly account for all of the limitations opined by the state agency psychologists. (*Id.*) In particular, Clampit asserts that the ALJ should have adopted the limitation "brief and superficial interaction with others." (*Id.* at 5) Further, Clampit asserts that ALJ's reasons for not adopting the limitation were unexplained and do not allow for meaningful review. (*Id.*) The Commissioner counters that the ALJ's RFC determination regarding Clampit's ability to interact with others was supported by substantial evidence. (Doc. No. 7 at 4-8)

Clampit's case was remanded by this Court in 2021 because the ALJ failed to distinguish between occasional and superficial contact in formulating the RFC. (Tr. 941) This Court determined that although the ALJ was not required to adopt the state psychiatric consultants' opinions that Clampit was restricted to superficial contact with others, the ALJ was required to provide an explanation for why he did not adopt the restriction because the medical source opinions conflicted with the RFC. (*Id.*) On remand, the ALJ updated the RFC in pertinent part as follows:

> During a training period of up to 30 days, capable of occasional interaction with coworkers and supervisors. After the training period limited to brief and superficial occasional interactions with the general public. Superficial defined as, able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion, or involve tandem tasks.

(Tr. 843)

Clampit argues that although the ALJ updated the RFC, the ALJ still erred because (1) the ALJ failed to explain the reasoning behind making a distinction for different limitations during and after a training period; (2) the ALJ failed to explain why he limited Clampit to superficial interaction with the general public, and did not extend the limitation to coworkers or supervisors; and (3) that

9

the ALJ's definition for "superficial" was arbitrary and unexplained. (Doc. No. 6 at 6-8) The Commissioner counters that the ALJ's determination should be upheld because it is supported by substantial evidence. (Doc. 7 at 4-8).

### A. Training Period Distinction

The RFC makes a distinction between Clampit's limitations during and after a training period. Clampit argues that the ALJ erred by not explaining his reasoning for making such a distinction. The RFC provides:

> During a training period of up to 30 days, [Clampit is] capable of occasional interaction with co-workers and supervisors. After the training period, limited to brief and superficial interactions with the general public – superficial defined as able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks. (Tr. 880)

The Commissioner ignores this argument in its brief. Nonetheless, other courts have reversed where, as here, the ALJ does not provide an explanation for making a distinction in abilities before and after a training period. *See Cook v. Kijakazi,* No. CV 21-4532, 2022 WL 1711654, at *2 (E.D. Pa. May 27, 2022) (remanding because ALJ failed to explain why claimant could have frequent interaction during a 30-day training period but only occasional interaction thereafter); *S.B. v. Comm'r of Soc. Sec*., No. CV 20-14192 (RBK), 2022 WL 16701880, at *3 (D.N.J. Feb. 15, 2022) (Remanding because the "It is not clear from the decision or record where the 30-day period, an exception to the general limitation of restricted social interaction, came from or what evidence supports it."); *N.B. v. Comm'r of Soc. Sec. Administration*, No. CV 20-12720 (RMB), 2022 WL 263431, at *6 (D.N.J. Jan. 28, 2022) ("The Court finds that the ALJ does not explain why the RFC assessment makes an exception for 'increased interactions initially required to learn the job,' and thus, the Court finds that the exception in the RFC assessment is not supported by substantial evidence."); *Derek W. v. Comm'r of Soc. Sec.,* No. C20-5748-MLP, 2021 WL 1940804, at *2 (W.D. Wash. May 14, 2021) (remanding because ALJ failed to explain distinction between claimants

ability to work with supervisors during training and post-training periods and the doctors opinion did not provide such a distinction). Nothing forbids the ALJ from making a distinction before and after a training period. However, the ALJ's opinion must "permit this reviewing court to follow the 'reasoning and treatment of' [medical] opinions." *Davidson v. Comm'r of Soc. Sec.,* No. 3:16CV2794, 2018 WL 1453472, at *2 (N.D. Ohio Mar. 23, 2018) (quoting *Davis v. Comm'r of Soc. Sec.*, No. 1:16 CV 2446, 2018 WL 137779, at *10 (N.D. Ohio 2018). Reversal is warranted when the ALJ fails to build a "logical bridge between the evidence on the record and his conclusion," *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Because the ALJ failed to explain his reasoning or the evidence supporting his decision to make a distinction between Clampit's abilities before and after the training period, remand is appropriate.

## B. Distinction between general public and coworkers/supervisors

Similarly, remand is appropriate for the ALJ's failure to explain the reasoning or evidence supporting his distinction in the RFC between the general public and coworkers/supervisors. The RFC limited Clampit to "brief and superficial interactions with the general public" after the training period.(Tr. 880) The ALJ failed to explain (1) why he omitted a "superficial interaction" limitation with the public during the training period[1] and (2) why he did not place a "superficial interaction" limitation on Clampit's co-workers and supervisors.[2]

In this Courts remand order, Judge Helmick explained that the case was remanded because "the ALJ omitted the limitation of 'superficial' contact in the RFC" without explanation. (Tr. 940-41). This violated SSR 96-8p which requires that "if the RFC assessment conflicts with an opinion

---

[1] The VE clarified whether "superficial" applied to co-workers and supervisors during the training period and the ALJ stated that it did not. (Tr. 880-81).
[2] The undersigned notes that the VE testified that a "brief and superficial" contact limitation with regard to co-workers and the public would not make a difference in his answer. However, a "brief and superficial" limitation on a supervisor would be work preclusive because "the job of a supervisor [is] to interact." (Tr. 886-88)

11

from a medical source, the adjudicator must explain why the opinion was not adopted." (Tr. 941). Upon remand, however, the ALJ has made a similar error.

Drs. Savitscus and Haskins opined that Clampit could "work in a setting with occasional superficial contact with others." (Tr. 851-52) The ALJ stated that he did not adopt the "superficial interactions" limitation from the doctors because "it is not a defined vocational term and there is no other definition explaining the extent of that type of communication." (Tr. 852) Despite this statement, the ALJ did adopt a "superficial interaction" limitation which he defined as follows:

> After the training period, limited to brief and superficial interactions with the general public – superficial defined as able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks.

(Tr. 880) Thus, the ALJ adopted a "superficial interaction" limitation but failed to explain why the limitation did not apply to the public during the training period or why it did not apply to co-workers/supervisors after the training period.

The Commissioner argues that the ALJ found Clampit's limitations fell somewhere "between" the medical opinions and findings and thoroughly explained his reasons for that determination. (Doc. No. 7. at 7) The Commissioner then points to evidence that Clampit: (a) was often cooperative at medical appointments, (b) improved his anger with treatment, and (c) went long swaths of time without treatment. (Doc. No. 7 at 5-6) Though this evidence can suggest that Clampit's limitations are not as severe as alleged, this information does not suggest an explanation for the ALJ's distinction between coworkers/supervisors and the general public.

The Commissioner's reliance on the ME's opinion is also unconvincing. ME Dr. Cohen opined that Clampit would not have difficulty interacting with coworkers/supervisors, only the public. Thus, the opinion provides some evidence for a distinction between the groups, but does not explain the before/after training distinction. For example, reliance on Dr. Cohen's opinion fails to

12

connect a logical bridge to why the ALJ omitted a "superficial interaction" limitation with the public during the training period. [3]

The ALJ's decision does not indicate to this reviewer what evidence and reasoning supported his distinction between coworkers/supervisors and the general public in the manner described in the RFC. The ALJ included a "superficial interaction" limitation in the RFC but did not explain why the limitation did not apply to the public during the training period or why it did not apply to co-workers/supervisors after the training period. Thus, the ALJ has failed create a "logical bridge between the evidence on the record and his conclusion," and remand is required. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011).

**C. Superficial Definition**

As the undersigned recommends reversal on the first two grounds and as the Commissioner failed to address Clampit's third argument, in the interest of judicial economy the undersigned will not address Clampit's final argument—that the ALJ's definition of superficial was arbitrary and unsupported. Nonetheless, the undersigned reiterates that since this case is being reversed due to the ALJ's handling of Clampit's ability to interact with others (which includes a discussion of superficial limitations), on remand the ALJ should ensure that their decision creates a logical bridge

---

[3] The ALJ's treatment of the medical opinions further muddies the water. The ALJ stated that he found Dr. Cohen's opinion "partially persuasive to the extent that the claimant had no more than moderate limitations in mental health functioning and did not meet a listing." The ALJ does not indicate whether he found Dr. Cohen's general public and coworkers/supervisor distinction persuasive. In contrast, the ALJ found the opinions of Drs. Savitscus and Haskins "mostly persuasive" and Dr. Wuebker "persuasive" and stated he accounted for their opined limitations in the RFC. The interaction limitations noted by these three doctors made no distinctions between groups as all three opinions found Clampit would have trouble interacting or relating with "others." (Tr. 851-52). The ALJ states that the limitations suggested by these doctors were "accounted for by the adopted [RFC]." (*Id.*) However, the ALJ does not specify why he did not adopt the limitation of superficial contact with "others" (meaning by inference coworkers, supervisors, and the public) despite stating that he adopted the three doctor's limitations in the RFC. Again, the ALJ's reasoning for not adopting the superficial limitation opined by Drs. Savitscus and Haskins (that the definition of superficial was arbitrary and unsupported) fails to provide a logical bridge to why the ALJ still included a superficial interaction limitation but only applied it to one group and only after a training period.

13

between the evidence on the record on all issues relating to the superficial interaction limitation including the ALJ's interpretation of the term superficial.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED AND REMANDED for further consideration consistent with this opinion.

Date: March 30, 2023                                               *s/ Jonathan Greenberg*
                                                                                Jonathan D. Greenberg
                                                                                United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** ***Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**